

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**ANTHONY ROY SAUNDERS,**

    Petitioner,

v.                                               Civil Action No. **3:16CV113**

**HAROLD CLARKE,**

    Respondent.

## REPORT AND RECOMMENDATION

Anthony Roy Saunders, a Virginia state prisoner proceeding *pro se*, brings this petition pursuant to 28 U.S.C. § 2254 (hereinafter "§ 2254 Petition," ECF No. 1). The matter is before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b). Saunders raises the following claims for relief:

> **Claim One:** Saunders's rights under the Fourth Amendment[1] were violated when the prosecution admitted into evidence a text message when no warrant had been issued for obtaining the text message. (§ 2254 Pet. 7.)
>
> **Claim Two:** Saunders's constitutional rights were violated when the trial court failed to declare a mistrial after the prosecution introduced evidence regarding obtaining Saunders's DNA which indicated that Saunders was incarcerated when the sample was taken. (*Id.* at 9.)
>
> **Claim Three:** "The trial court did not have jurisdiction to try Saunders for first degree murder, attempted robbery, [and] conspiracy to commit

---

[1] That amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

robbery because no elements of the statutes exist in this case." (*Id.* at 10.)[2]

Respondent moves to dismiss. For the reasons that follow, it is RECOMMENDED that the Court DISMISS Claims One and Two as procedurally defaulted and DISMISS Claim Three for failure state a viable basis for § 2554 relief. It is further RECOMMENDED that the Court GRANT the Motion to Dismiss (ECF No. 14) and DENY the § 2254 Petition.

## A. Procedural History

Following a jury trial in the Circuit Court for the City of Chesapeake ("Circuit Court"), Saunders was convicted of murder, attempted robbery, two counts of use of a firearm in the commission of a felony, and conspiracy to commit robbery. (ECF No. 16–1, at 1.) The Circuit Court sentenced Saunders to a 31-year term of imprisonment. (*Id.* at 2.) Saunders appealed.

### 1. Direct Appeal

On appeal, Saunders challenged the sufficiency of the evidence. (ECF No. 16–2, at 1.) The Court of Appeals of Virginia aptly summarized the abundant evidence of Saunders's guilt as follows:

> At about 9:30 p.m. on September 14, 2010, Richard Emerle was in a room at the Budget Lodge Motel in Chesapeake with Conell Darden and another individual. After a telephone call, Darden advised that he was expecting someone named "Cobb" to arrive at the door. Emerle was seated beside the door. Emerle answered a knock at the door and admitted Deon Cobb, whom Emerle did not know. Cobb and Darden had a brief conversation. As Cobb was preparing to leave, Emerle got up to open the door for him. Cobb said, "That's okay. I got it." When Cobb turned the door handle the door came "flying open" and two gunmen appeared.
> One of the gunmen entered the room and demanded money, Darden said he did not have any money. When the gunman persisted in his demand, Darden pointed to a dresser drawer and said it was inside. As the gunman turned toward the dresser Darden tried to tackle him. The gun fired, striking Darden in the chest. The gunman and the other armed individual fled from the scene.

---

[2] The Court corrects the capitalization, punctuation, and spelling in the quotations from Saunders's documents.

The police arrived at the motel room at 9:37 p.m. in response to a 911 call placed by Emerle. Darden was transported to the hospital for emergency medical treatment, but he subsequently died from the gunshot wound to his chest.

During his investigation regarding the shooting, Detective James Thomas examined Cobb's cellular telephone. At 10:58 p.m. on September 14, 2010, Cobb's phone received a text message stating, "[W]ipe that draw off 4 me." The message was sent from a phone with the number 419–0926.

Although the device was registered to appellant's thirteen-year-old son, appellant often used the phone with the number 419-0926 to communicate by text message with his girlfriend, Shannon Walker, and others. On September 13, 2010, there were nine calls between 419–0926 and Cobb's phone. There were twelve such calls on September 14, 2010 and one call on September 15, 2010.

When questioned by the police on September 15, 2010, Cobb identified appellant as the one who shot Darden. At trial, however, Cobb testified that he had identified appellant only because the police officer told him to do [so]. Thomas disputed that he told Cobb to identify appellant, and said he had never heard appellant's name until Cobb revealed it.

Video taken by a surveillance camera showed Cobb interacting with two men outside the motel room where the shooting occurred. When Cobb reached the door of the room, he raised his arm. Then, he knocked on the door and was admitted inside.

Monica Harper, the records custodian for Verizon Wireless telephone company, testified regarding a number of text messages received and sent from 419–0926 on September 14, 2010. The messages conveyed that the user of 419–0926 was planning to obtain some money and was trying to recruit another person to do a "sting" with him. After the shooting of Darden occurred, the user of 419–0926 sent text messages to Walker expressing desperation and that he was about to throw away his phone and go into hiding. On the day after the shooting, the user of 419–0926 sent text messages to Walker stating that no one could identify him and that "nobody knew me but deon." He further told Walker to call "Deon's phone" to see who answered. The user of 419–0926 later surmised that the police had "Deon's" phone and that "Deon" might have talked to the police. The Commonwealth proved that two calls from 419-0926 were made within the minute of 9:39 p.m. on September 14, 2010. The calls were routed through a cellular phone tower with coverage within about 200 yards from the Budget Lodge Motel.

Appellant introduced testimony from Walker regarding text messages she and appellant exchanged on September 13, 2010. Walker explained that the messages indicated she and appellant were having problems in their relationship. Walker also explained text messages she sent appellant at 9:53 p.m. and 9:58 p.m. on September 14, stating that she was frustrated by appellant getting himself to places, then asking her to come get him because he had no way back home. Appellant presented testimony that on the evening of September 14, 2010 he was with Walker, and then his uncle in Portsmouth, thus accounting for his whereabouts until 10:10 p.m.

3

> Appellant contends the evidence was insufficient to prove that he conspired to commit robbery and participated in the attempted robbery of Darden. He argues there was no evidence placing him at the crime scene. However, the jury did not accept appellant's alibi evidence. . . .
>
> . . . .
>
> The Commonwealth's evidence showed that appellant communicated by cell phone with Cobb numerous times on the day the shooting occurred. Appellant had indicated he was going to obtain some money, and was trying to get someone to help him. Surveillance video showed Cobb interacting with two individuals outside the motel before he gained admission to the room. As Cobb was leaving the room, and with the door unlocked, two armed men appeared. One of them, whom Cobb identified as appellant, demanded money from Darden. Appellant shot Darden when Darden tried to tackle him. Just after the shooting occurred, the phone appellant had been using made two calls that were routed through a cell tower in the vicinity of the motel. Later, appellant asked Cobb to "wipe the draw" and thus remove potentially incriminating evidence that appellant could have left behind in the motel room. Moreover, the text messages Walker subsequently received from appellant implicated him as the shooter. Cobb identified appellant to the police as the shooter. Considering all the facts and circumstances, the evidence proved beyond a reasonable doubt that appellant entered into an agreement with Cobb to commit robbery, that appellant was the person who shot Darden during an attempted robbery, and that appellant was guilty of the offenses.

(ECF No. 16–2, at 1–4.)

In addition to the above, Saunders appealed the denial of his motion for a mistrial. (*Id.* at 4.) That motion was based on the fact that "[o]n the second day of appellant's trial, Bethany Graham, an evidence technician trainee for the Chesapeake police, testified that she went to the city jail to obtain a buccal swab from appellant. At the conclusion of Graham's testimony, appellant moved for a mistrial claiming that he was prejudiced by the implication that he had been in jail before his trial." (*Id.*) The Court of Appeals of the Virginia found that Saunders had defaulted this claim by failing to make a contemporaneous objection. (*Id.* at 4–5 (citing Va. Sup. Ct. R. 5A:18)).

Finally, on appeal, Saunders asserted that the Circuit Court erred by "admitting into evidence the Verizon Wireless records containing the printed contents of the text messages

4

received and sent from the phone with number 419–0926. Appellant argues admission of the content of the messages violated the best evidence rule and his constitutional right to confront the evidence against him." (*Id.* at 5.) The Court of Appeals of Virginia rejected this claim, noting:

> Appellant introduced in his case-in-chief Verizon Wireless records containing the contents of text messages sent and received from 419–0926. Appellant introduced the testimony of Walker explaining the text messages from September 13 through September 15, 2010. The evidence introduced by appellant was of the same character and subject to the same objections as the Commonwealth's evidence he seeks to challenge on appeal. Therefore, we do not consider the merit of this issue because appellant waived any objection to the Commonwealth's evidence.

(*Id.* at 6 (citation omitted).) Thereafter, the Supreme Court of Virginia refused and dismissed Saunders's petition for appeal to the Supreme Court of Virginia. (ECF No. 16–3, at 1–2.)

### 2. State Habeas

On August 11, 2014, Saunders filed a petition for a writ of habeas corpus with the Circuit Court, wherein he raised the following claims:

| | |
|---|---|
| Claim A: | "Counsel failed to object in a timely manner to a statement made by Ms. Bethany Graham stating 'I went to the jail' to get a D.N.A. sample." (ECF No. 16–4, at 5.) |
| Claim B: | "The Commonwealth knowingly introduced evidence obtained in violation of the petitioner's 4th Amendment right when it introduced the phone record obtained from Verizon." (*Id.*) |
| Claim C: | "The Commonwealth violated the petitioner's 6th & 14th Amendment rights when it entered into evidence the phone records illegally obtained." (*Id.*) |
| Claim D: | "The Commonwealth violated the petitioner's 14th Amendment right when it introduced hearsay evidence without allowing the petitioner to question the others of the text." (*Id.*) |
| Claim E: | "Counsel for the petitioner failed to perfect the petitioner's appeal when he filed the assignment of error wrong, preventing the petitioner's claim from receiving a proper review by the Supreme Court of Virginia." (*Id.*) |

5

By Final Order entered on March 19, 2015, the Circuit Court found that claims B, C, and D were barred by the rule in *Slayton v. Parrigan*, 205 S.E.2d 680, 682 (Va. 1974) because they could have been, but were not, raised on direct appeal. (ECF No. 16-5, at 3-4 (citation omitted).) The Circuit Court further found that Saunders's remaining claims lacked merit. (*Id.* at 4.) Saunders appealed that decision to the Supreme Court of Virginia, which refused his petition for appeal. (ECF No. 16, at 3.)

### B. Exhaustion and Procedural Default

Before a state prisoner can bring a § 2254 petition in federal district court, the prisoner must first have "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). State exhaustion "'is rooted in considerations of federal-state comity,'" and in Congressional determination via federal habeas laws "that exhaustion of adequate state remedies will 'best serve the policies of federalism.'" *Slavek v. Hinkle*, 359 F. Supp. 2d 473, 479 (E.D. Va. 2005) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 491-92 & n.10 (1973)). The purpose of exhaustion is "to give the State an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Picard v. Connor*, 404 U.S. 270, 275 (1971) (internal quotation marks omitted). Exhaustion has two aspects. First, a petitioner must utilize all available state remedies before he can apply for federal habeas relief. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 844-48 (1999). As to whether a petitioner has used all available state remedies, the statute notes that a habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State ... if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).

The second aspect of exhaustion requires a petitioner to have offered the state courts an adequate "'opportunity'" to address the constitutional claims advanced on federal habeas.

*Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quoting *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995)). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Id.* Fair presentation demands that a petitioner present "'both the operative facts and the controlling legal principles'" to the state court. *Longworth v. Ozmint*, 377 F.3d 437, 448 (4th Cir. 2004) (quoting *Baker v. Corcoran*, 220 F.3d 276, 289 (4th Cir. 2000)). The burden of proving that a claim has been exhausted in accordance with a "state's chosen procedural scheme" lies with the petitioner. *Mallory v. Smith*, 27 F.3d 991, 994–95 (4th Cir. 1994).

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). This doctrine provides that "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Id.* (citing *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991)). A federal habeas petitioner also procedurally defaults claims when he or she "fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Id.* (quoting *Coleman*, 501 U.S. at 735 n.1).[3] The burden of pleading and proving that a claim is procedurally defaulted rests with the state. *Jones v. Sussex I State Prison*, 591 F.3d 707, 716 (4th Cir. 2010) (citing cases). Absent a showing of cause and prejudice or a fundamental miscarriage of justice, this

---

[3] Under these circumstances, even though the claim has not been fairly presented to the Supreme Court of Virginia, the exhaustion requirement is "technically met." *Hedrick v. True*, 443 F.3d 342, 364 (4th Cir. 2006) (citing *Gray v. Netherland*, 518 U.S. 152, 161-62 (1996)).

7

Court cannot review the merits of a defaulted claim. *See Harris v. Reed*, 489 U.S. 255, 262 (1989).

Here, the Circuit Court found that Claim One[4] was defaulted under the rule in *Slayton*, because Saunders could have, but failed to, raise this claim on direct appeal. (ECF No. 16–5, at 3–4 (citation omitted).) *Slayton* constitutes an adequate and independent state procedural rule when so applied. *See Mu'Min v. Pruett*, 125 F.3d 192, 196–97 (4th Cir. 1997). Thus, Saunders procedurally defaulted Claim One. Additionally, the Court of Appeals of Virginia found that Saunders had defaulted Claim Two for failing to make a contemporaneous objection. (ECF No. 16–2, at 5). Virginia Supreme Court Rule 5A:18, commonly known as the "contemporaneous objection rule," qualifies as an adequate and independent state procedural rule for the purposes of procedural default. *Weeks v. Angelone*, 176 F.3d 249, 270 (4th Cir. 1999); *Makdessi v. Watson*, 682 F. Supp. 2d 633, 650 (E.D. Va. 2010) ("Rule 5A:18 constitutes an adequate and independent ground for denying a claim." (citing *Clagett v. Angelone*, 209 F.3d 370, 378 (4th Cir. 2000))). Thus, Saunders procedurally defaulted Claim Two.

To the extent that Saunders contends that the ineffective assistance of counsel constitutes cause to excuse his defaults, that contention lacks merit for the reasons explained below.

To demonstrate ineffective assistance of counsel, a convicted defendant must show, first, that counsel's representation was deficient and, second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of *Strickland*, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show

---

[4] In the Circuit Court, Claim One was denominated as Claim B.

that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

### 1. Alleged Ineffective Assistance with Respect to the Default of Claim Two

In rejecting Saunders's state habeas Claim A, the Circuit Court explained why counsel's omissions did not suffice to demonstrate cause and prejudice to excuse Saunders's procedural default of Claim Two.

> In claim (A), the petitioner alleges counsel was ineffective because he failed to object in a timely manner to a statement made by Bethany Graham. Petitioner refers to Graham's testimony at trial that she "went to the City Jail, and the buccal swab is basically you take two Q-tips, and you swab the inside of the mouth on the cheek, and that's just to get a good DNA swab from the interior of the mouth." Petitioner alleges this testimony prejudiced him because the jury heard that he was at jail prior to trial. The petitioner's claim is twofold: he alleges that counsel's "failure was prejudicial to his trial," and "violated his right to have his the matter properly presented to the Court of Appeals."
> Petitioner has failed to show that "but for counsel's error, a reasonable probability exists of a different result." In the context of trial error claim, that means a reasonable probability that had counsel made a timely request for a mistrial, the Court would have granted one. The record, including the trial transcript, demonstrates that petitioner's claim is without merit. Counsel did request a mistrial, and the Court entertained that motion on the merits, but denied his motion for a mistrial. (Tr. at 74). The Court did offer counsel a cautionary instruction, which counsel made a tactical decision to refuse. (Tr. at 76).
> > This was a discretionary matter for the Court.
> > The decision whether to grant a motion for mistrial lies within a trial court's exercise of discretion. When a motion for mistrial is made, based upon an allegedly prejudicial event, the trial court must make an initial factual determination, in the light of all the circumstances of the case, whether the defendant's rights are so indelibly prejudiced as to necessitate a new trial.
>
> *Green v. Commonwealth*, 266 Va. 81, 102, 580 S.E.2d 834, 846 (2003).
> Here, the Court exercised that discretion, and denied petitioner's motion for a mistrial.

Accordingly, petitioner cannot satisfy the prejudice prong of *Strickland* and this portion of petitioner's claim is dismissed.

Petitioner has also failed to satisfy the prejudice prong as it relates to his appellate claim. At the threshold, petitioner is not entitled to a belated appeal simply because counsel failed to preserve an issue at trial; petitioner was not denied his right to appeal. Instead the proper inquiry where counsel has failed to properly preserve an issue is whether, but for counsel's error, a reasonable probability exists that the appeal would have been successful. *See Williams v. Warden of Sussex I State Prison*, 278 Va. 641, 648, 685 S.E.2d 674, 678 (2009) (holding that petitioner failed to prove prejudice where he alleged that counsel failed to assign error to issue on appeal, but petitioner failed to show reasonable probability that appeal would have been successful).

Petitioner has failed to demonstrate that, had he properly preserved the issue, he would have been successful on appeal. The standard of review of claims for mistrial on appeal is highly deferential because "the [trial] judge is in the best position to evaluate [the mistrial motion]. The judge is physically on the scene, able to observe matters not usually reflected in a cold record. The judge is able to ascertain the . . . reaction of the jurors . . . [t]hat is to say, the judge has his finger on the pulse of the trial." *See Peyton and Jackson v. United States*, 709 A.2d 65, 69 (D.C. 1998) (quoting *State v. Hawkins*, 604 A.2d 489, 493 (Md. 1992)).

The remedy of granting a mistrial is a "drastic" one to be used "only in very extraordinary and striking circumstances." *Briley v. Commonwealth*, 221 Va. 563, 576, 273 S.E.2d 57, 65 (1980). Whether improper evidence is so prejudicial as to require a mistrial is a question of fact to be resolved by the trial court in each particular case." *Fowlkes v. Commonwealth*, 52 Va. App. 241, 248, 663 S.E.2d 98, 101–02 (2008) (quoting *Beavers v. Commonwealth*, 245 Va. 268, 280, 427 S.E.2d 411, 420 (1993)).

The standard of review on appeal is highly deferential because "the [trial] judge is in the best position to evaluate [the mistrial motion]. The judge is physically on the scene, able to observe matters not usually reflected in a cold record. The judge is able to ascertain the . . . reaction of the jurors . . . [t]hat is to say, the judge has his finger on the pulse of the trial." *See Peyton and Jackson v. United States*, 709 A.2d 65, 69 (D.C. 1998) (quoting *State v. Hawkins*, 604 A.2d 489, 493 (Md. 1992)).

The trial judge did not abuse his discretion in finding that this was not such a circumstance. The appellate courts will not reverse a denial of a motion for mistrial unless there is a "manifest probability" that the trial court's ruling was "prejudicial" to the defendant. *See Pollino v. Commonwealth*, 42 Va. App. 243, 248, 590 S.E.2d 621, 624 (2004) (citation omitted).

Here no manifest probability existed. The trial court did not consider the witnesses statement so damaging as to require a mistrial. The statement, which was isolated, was not responsive to the prosecutor's question as to the procedure for obtaining a buccal swab, and did not specifically state that the petitioner was incarcerated for any particular offense.

Moreover, the evidence against petitioner was strong. . . .

> In light of this evidence, that the jury heard that the collection of the buccal swab took place at the jail did not require a mistrial. Notably, if the appellate court had believed that petitioner was prejudiced by this evidence it could have invoked the ends of justice exception to Rule 5A:18, but did not. No reasonable probability exists of a different result on appeal, had counsel's motion been timely made.

(ECF No. 16–5, at 6–11 (alterations in original).) As Saunders has failed to demonstrate cause and prejudice to excuse his default, it is RECOMMENDED that Claim Two BE DISMISSED.

### 2. Alleged Ineffective to Excuse the Default of Claim One

With respect to his default of Claim One, Saunders faults counsel for not pursuing a Fourth Amendment challenge the introduction of "Verizon records obtained ... with *no* ... warrant" related to a phone used by Saunders. (§ 2254 Pet. 9.) Specifically, this claim "concerns the admission of evidence of the text message[s] from (757) 419–0926." (Pet'r's Resp. 1, ECF No. 20.) Saunders complains that "the cell phone belonged to an eleven (11) year old *minor*." (*Id.* at 4.) Saunders insists that "Verizon Inc. illegally gave cell phone records of a *minor* child eleven years [old] to Detective Thomas with no subpoena . . . ." (*Id.*) As explained below, counsel reasonably eschewed pursuing a challenge to the records because Saunders failed to demonstrate he had standing to challenge the introduction of the records.

The Fourth Amendment protects "against unreasonable searches and seizures." U.S. Const. amend. IV. A "search is unreasonable when it infringes on 'an expectation of privacy that society is prepared to consider reasonable.'" *United States v. Castellanos*, 716 F.3d 828, 832 (4th Cir. 2013) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). "In order to demonstrate a legitimate expectation of privacy, [a defendant] must [(1)] have a subjective expectation of privacy, and [(2)] that subjective expectation of privacy must be objectively reasonable; in other words, it must be an expectation that society is willing to recognize as reasonable." *Id.* (internal quotation marks omitted) (citations omitted). The defendant bears the

11

burden of demonstrating a legitimate expectation of privacy in the area searched. *Rawlings v. Kentucky*, 448 U.S. 98, 104 (1980).

Here, the phone is question was purchased and registered in the name of Damion Saunders. (Jan. 24, 2012 Tr. 42.) Damion Saunders was Saunders's thirteen-year-old son. (Jan. 24, 2012 Tr. 31.) Saunders's insistence that the seizure of phone records was illegal is not predicated on a personal privacy interest in the phone, but simply on the fact that the authorities lacked a subpoena for the records from the phone. "The Fourth Amendment protects people, not places. Accordingly, Fourth Amendment rights may not be vicariously asserted." *Castellanos*, 716 F.3d at 832–33 (internal quotation marks omitted) (citations omitted). Saunders fails to articulate why he *personally* had a reasonable privacy interest in the records associated with his son's phone that society would be willing to recognize. Moreover, given the facts and the relevant law, counsel reasonably eschewed seeking to move to suppress the phone records on the ground that Saunders had a reasonable expectation of privacy in the records.

Initially, the Court notes that a number of "courts have held that a defendant lacks standing to challenge cell phone records in which the defendant was not a registered subscriber." *United States v. Davis*, No. CRIM. 10–339–HA, 2011 WL 2036463, at *3 (D. Or. May 24, 2011) (citing *United States v. Novas*, 640 F. Supp. 2d 256, 264 (S.D.N.Y. 2009), *rev'd on other grounds*, 597 F.3d 492 (2d Cir. 2010); *United States v. Suarez-Blanca*, No. 1:07–CR–0023–MHS/AJB, 2008 WL 4200156, at *6–7 (N.D. Ga. Apr. 21, 2008); *United States v. Skinner*, No. 3:06–CR–100, 2007 WL 1556596, at *15–17 (E.D. Tenn. May 24, 2007); *United States v. Solomon*, No. 02:05cr385, 2007 WL 927960, at *3 (W.D. Pa. Mar. 26, 2007)). Furthermore, "[w]hen attempting to determine whether a defendant has a reasonable expectation of privacy in property that is held by another, [courts should consider] such factors as 'whether that person

claims an ownership or possessory interest in the property, and whether he has established a right or taken precautions to exclude others from the property.'" *Castellanos*, 716 F.3d at 833–34 (quoting *United States v. Rusher*, 966 F.2d 868, 875 (4th Cir. 1992)).

Saunders did not and does not claim an ownership interest in the phone. Instead, he has adamantly insisted that the phone belonged to his son Damion. Moreover, counsel would have had difficulty insisting that Saunders had a reasonable expectation of privacy in the phone and associated records as Saunders made little effort to exclude others from utilizing the phone. *See id.* Rather, at trial, the defense, through the testimony of Shannon Walker, Saunders's fiancé, suggested that Saunders was just one of many people who used the phone in question:

| Defense Counsel: | Ms. Walker you stated that phone number 419–0926 belonged to Mr. Saunders back on September 14, 2010? |
|---|---|
| Walker: | I said it's the number that he used. |
| Defense Counsel: | That he used. To your knowledge — do you have personal knowledge of any other individuals using that number? |
| Walker: | Yes, I do. |
| Defense Counsel: | Who? |
| Walker: | His uncle, his friends, people that I guess he was affiliated with. That phone was used by a lot of people, not just Mr. Saunders. |

(Jan. 24, 2012 Tr. 34.) Given the foregoing circumstances, Saunders fails to demonstrate that counsel acted deficiently in not advancing a Fourth Amendment challenge to the text messages linked to his son's phone.

As Saunders fails to demonstrate cause and prejudice to excuse his default, it is RECOMMENDED that Claim One be DISMISSED.

### C. Claim Three

Congress limited federal habeas jurisdiction to those claims that the custody of a petitioner violates the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). Thus, the Supreme Court has admonished that "it is not the province of a federal habeas court to

13

reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). Saunders's third claim, which is a rambling, inarticulate challenge to the jurisdiction of the Circuit Court, fails to advance a viable basis for federal habeas relief.

In Claim Three, Saunders asserts that the Circuit Court "did not have jurisdiction to try Saunders for first degree murder, attempted robbery, [and] conspiracy to commit robbery because no elements of the statutes exist in this case." (§ 2254 Pet. 10.) Thereafter, Saunders recites some Virginia law pertaining to indictments (*id.* at 12–14) and then notes that, "Detective Becky M. Robinson appeared before the Grand Jury. Her signature appears on the indictment. At no time did Robinson talk with Saunders." (*Id.* at 15.) Saunders concludes that "[t]he indictments against Saunders are defective because Robinson had no first hand knowledge of the issues and the testimony she gave before the Grand Jury is hearsay and not admissible." (*Id.* at 16.)

Saunders's arguments are factually and legally frivolous. The Indictments in his case are signed by the foreperson of the Grand Jury, not Detective Robinson. *See, e.g.*, Indictment 1, *Commonwealth v. Saunders*, No. 11-558-00 (Va. Cir. Ct. Mar. 1, 2011). The Indictments merely reflect that Detective Robinson served as a witness before the Grand Jury. *Id.* Furthermore, Saunders fails to articulate a federal constitutional defect with the Indictments. Saunders's nebulous argument that the Circuit Court lacked jurisdiction because of allegedly defective indictments finds its roots, if anywhere, in state law. Such an argument fails to provide a viable basis for federal habeas corpus relief. *Wright v. Angelone*, 151 F.3d 151, 158 (4th Cir. 1998) ("[N]o federal court to our knowledge has ever granted a writ where a state court's

asserted lack of jurisdiction resulted solely from the provisions of state law." (quoting *U.S. ex rel. Roche v. Scully*, 739 F.2d 739, 741 (2d Cir. 1984))).

To the extent that Saunders contends that his right to due process was violated because insufficient evidence supported his conviction for first degree murder, such a contention is utterly lacking merit.[5] As aptly summarized by the Court of Appeals of Virginia, *see supra* Part A.1, an abundance of evidence demonstrated Saunders's guilt as to all charges.

Lastly, the Court notes that, as part of Claim Three, Saunders makes a passing assertion that he is "factually innocent." (§ 2254 Pet. 17.) In an abundance of caution, the Court will deem Saunders to suggest that the Court can review his defaulted claims because he is actually innocent. Nevertheless, as explained below, Saunders's assertion of actual innocence is baseless.

"Claims of actual innocence, whether presented as freestanding ones, or merely as gateways to excuse a procedural default, should not be granted casually." *Wilson v. Greene*, 155 F.3d 396, 404 (4th Cir. 1998) (internal citations omitted). Here, the Court reviews Saunders's assertion of innocence under the more lenient standard for gateway actual innocence claims, because subscribing to Saunders's actual innocence claim would permit the Court to consider the merits of his otherwise procedurally defaulted claims. A gateway claim requires a petitioner to present "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). "Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." *Id.* If a petitioner meets the burden of producing new, truly reliable evidence of his or her innocence, the Court then considers "'all the evidence,' old and new, incriminating and exculpatory, without regard to

---

[5] Toward the end of his § 2254 Petition, Saunders states that "Saunders is *not* guilty because he was not at the scene of the shooting. Saunders has established *prima facie* evidence 'no **elements of first-degree murder exist[].**'" (§ 2254 Pet. 16.)

15

whether it would necessarily be admitted under 'rules of admissibility that would govern at trial'" and determines whether the petitioner has met the standard for a gateway claim of innocence. *House v. Bell*, 547 U.S. 518, 538 (2006) (quoting *Schlup*, 513 U.S. at 327–28). The Court must determine "whether 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *Sharpe v. Bell*, 593 F.3d 372, 377 (4th Cir. 2010) (quoting *Schlup*, 513 U.S. at 327–28). "The Court need not proceed to this second step of the inquiry unless the petitioner first supports his or her claim with evidence of the requisite quality." *Hill v. Johnson*, No. 3:09cv659, 2010 WL 5476755, at *5 (E.D. Va. Dec. 30, 2010) (citing *Weeks v. Bowersox*, 119 F.3d 1342, 1352–53 (8th Cir. 1997); *Feaster v. Beshears*, 56 F. Supp. 2d 600, 610 (D. Md. 1999)). Moreover, "actual innocence" means factual innocence and not just legal insufficiency. *See Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (citations omitted) (internal quotation marks omitted) ("[T]he miscarriage of justice exception is concerned with actual as compared to legal innocence.")

Saunders has not provided any new reliable evidence of his innocence. Here, the only new evidence of his innocence that Saunders has presented is his own affidavit. Saunders's affidavit does not qualify as the sort of new reliable evidence described by the Supreme Court. *Schlup*, 513 U.S. at 324; *see Perry v. Virginia*, No. 3:13CV327–HEH, 2013 WL 4590619, at *4 (E.D. Va. Aug. 28, 2013) (concluding defendant's post-conviction declaration of innocence could not support a claim of actual innocence); *McGivery v. Johnson*, No. 3:10CV455–HEH, 2011 WL 1838874, at *5 (E.D. Va. May 13, 2011) (same). To accept such commonplace declarations of innocence would ignore the Supreme Court's admonition that the quality of evidence necessary to support a claim of actual innocence "is obviously unavailable in the vast

majority of cases." *Schlup*, 513 U.S. at 324; *see Calderon*, 523 U.S. at 559 (emphasizing that new reliable evidence of innocence is a "rarity").

As Saunders has failed to demonstrate any viable basis for federal habeas relief, it is RECOMMENDED that Claim Three be DISMISSED.

**D.     Conclusion**

Accordingly, it is RECOMMENDED that Respondent's Motion to Dismiss (ECF No. 14) be GRANTED, Saunders's claims be DISMISSED, the § 2254 Petition be DENIED, and the action be DISMISSED. It is further RECOMMENDED that the Court deny a certificate of appealability.

Saunders is advised that he may file specific written objections to the Report and Recommendation within fourteen (14) days of the date of entry hereof. Such objections should be numbered and identify with specificity the legal or factual deficiencies of the Magistrate Judge's findings. *See* Fed. R. Civ. P. 72(b). Failure to timely file specific objections to the Report and Recommendation may result in the dismissal of his claims, and it may also preclude further review or appeal from such judgment. *See Carr v. Hutto*, 737 F.2d 433, 434 (4th Cir. 1984).

The Clerk is DIRECTED to send a copy of this Report and Recommendation to Saunders and counsel for Respondent.

It is so ORDERED.

/s/ [signature]
Roderick C. Young
United States Magistrate Judge

Date: January 11, 2017
Richmond, Virginia